**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

ROBERT CLAUDE MCCORMICK,   )
                                       )
                Petitioner,   )
                                         )
vs.                                 )      Case No. CIV-10-117-JHP-KEW
                                       )
DAVID PARKER, Warden,       )
                                       )
               Respondent. )

## OPINION AND ORDER

This matter comes before the Court on petitioner's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner an inmate currently incarcerated at the James Crabtree Correctional Center located at Helena, Oklahoma, attacks his conviction in the District Court of Bryan County, Case No. CF-2002-105 for Count 1: Child Sexual Abuse, in violation of 10 O.S. 2001, § 7115(E), and Count II: Child Abuse, in violation of 10 O.S. 2001, § 7115(A). In accordance to the jury's recommendation, petitioner was, February 22, 2007, sentenced to life imprisonment for each count, with the sentences to run consecutively. On April 29, 2008, the Oklahoma Court of Criminal Appeals ("OCCA"), in an unpublished summary opinion, affirmed petitioner's conviction and modified petitioner's sentences to run concurrently. Dkt. # 16-4.

On direct appeal, the sole issue was whether the jury instructions allowed the jury to convict the petitioner of child abuse on the basis of the same conduct used to support the child sexual abuse count and therefore violated the Double Jeopardy Clause of the United

States Constitution. Finding that the petitioner's "crimes did not arise out of a single act,"[1] the OCCA found petitioner "was convicted of two separate and distinct crimes and the actions taken to complete these crimes did not arise out of one act." *Id.* While finding no impact on the verdict of guilt, the OCCA questioned the impact on sentencing and therefore, modified the sentences to run concurrently. Dkt. # 16-4.

Next, petitioner filed an application for post-conviction relief with the Bryan County District Court, which was denied on November 17, 2009. Petitioner filed an appeal and on March 8, 2010, the OCCA affirmed, finding petitioner had not raised any issues, with the exception of his claim of ineffective appellate counsel, that "either was not or could not have been asserted during his trial or in his direct appeal. All issues which were raised and decided on direct appeal are barred from further consideration by *res judicata*, and all issues which could have been previously raised but were not are waived." Dkt. # 16-8, at p. 1 (citations omitted). In affirming the decision of the Bryan County District Court's decision in the post-conviction proceeding, the OCCA held, on the issue of ineffective assistance of appellate counsel,

> appellate counsel was successful in having his sentences allowed to be run concurrently, such that he is effectively serving one life sentence. He has not established that the outcome of his appeal could have or should have been any different. Petitioner's jury found him guilty beyond a reasonable doubt of both crimes charged, and he has not established factual innocence. *Id.*, at p. 2 (citations omitted).

---

[1]Dkt. # 16-4, at pp. 2-5.

Petitioner now seeks relief pursuant to 28 U.S.C. § 2254. For the reasons discussed below, this Court finds the petition for writ of habeas corpus should be granted as to Count II.

## I. RECORDS REVIEWED

This Court has reviewed (1) the Petition for Habeas Corpus; (2) the Response to the Petition filed by the State of Oklahoma; (3) the Reply to the Response filed by the Petitioner; (4) the Original Record from Bryan County District Court Case No. CF-2002-105; (5) the transcript of the Preliminary Hearing held on June 7, 2005; (6) the transcript of a Motion for Detention without Bond held on May 17, 2005; (7) the transcript of the Preliminary Hearing held on August 26, 2005; (8) the transcript of the Jury Trial held on January 24-26, 2007 (Volumes I and II); (9) the transcript of the sentencing hearing held on February 22, 2007, and all other records and exhibits filed herein.

## II. SUMMARY OF THE FACTS

M.K. testified that the defendant came to live in Bokchito, Oklahoma with Deanna Auldridge and her three children when M.K. was seven years old. J.T. Tr., Vol. I, at pp. 159-162. The defendant brought a motor home onto Auldridge's property and M.K. began staying in the defendant's motor home when she was almost 8 years old. *Id.*, at p. 163. The defendant made methamphetamine inside the motor home and he had M.K. hold a coffee filter in front of an electric heater to dry and then place a white powdery substance into baggies. *Id.*, at pp. 168-169. M.K. observed the defendant make the methamphetamine, sell it, use it, and smoke it with her mom. *Id.*, at pp. 170-172. M.K. testified that she used methamphetamine for the first time when she about 8 and ½ years old that she got from the

defendant. *Id.*, at pp. 173-174. Additionally, M.K. testified she lived in the motor home with the defendant until she was 11 years old. During this time period, beginning when M.K. was about 8 years old, M.K. testified the defendant placed his penis inside her vagina more times than she could count. *Id.*, at pp. 177-181, 213-219.

M.K.'s brother, R.K., also testified about a motor home that the defendant and M.K. lived in, describing it very much the same as M.K. had. *Id.*, at pp. 242-243. R.K. testified he was probably 8 when M.K showed him methamphetamine in the defendant's motor home when the defendant was not at home. *Id.*, at pp. 259-260. R.K. further testified that the defendant had a lot of friends in and out of the motor home; but they did not stay a long time. *Id.*, at p. 275. Both M.K. and R.K testified that the defendant never had a job during the four-year time period that he lived with them and he did not get a welfare check, yet he had money. *Id.*, at pp. 176 and 275.

Michael Hutchinson, a drug task force agent, testified he came in contact with M.K in July of 2001, when M.K was 10 or 11 years old and that M.K. told him that a gentleman was living in a travel trailer beside her mom's home and that she'd seen him manufacture methamphetamine in the past. According to the agent, M.K. had a pretty detailed knowledge of the process for someone her age. After speaking with M.K., the agent attempted to verify that there was a methamphetamine lab in a motor home near M.K.'s residence, but it had been moved prior to his arrival. While unable to verify the motor home's presence, the agent testified he believed it had been there due to tracks which were located where the motor home had been described as being parked. J.T.Tr., Vol. II, at pp. 326-341.

4

John Hooper, a Department of Human Services (DHS) worker, testified he received a referral in the summer of 2001 that alleged that M.K. was being forced to stay in a motor home with her stepfather and that drugs were being manufactured on site. *Id*., at pp. 354-355. On July 24, 2001, the DHS worker interviewed M.K. at her grandmother's home. *Id*., at p. 373. M.K. advised the DHS worker that methamphetamine was being made in the motor home and she gave details indicating that they used acetone, coffee filters, jars, and red, which created brown bubbles. *Id*., at p. 361. According to the DHS worker, M.K. had a very unique understanding of the process of manufacturing that was unusual for a child her age. *Id.*, at p. 367. When Hooper went to the residence, he spoke with the defendant who told him there had been a motor home parked on the property but that he had sold it the previous Monday. *Id*., at p. 364.

In December of 2001, Amy Morse, a DHS worker in the Child Welfare Department, was called to M.K.'s school because M.K. was reportedly involved in bullying of other kids. *Id*., at p. 393. Following a meeting with M.K., Ms. Morse, and several school officials, Ms. Morse was concerned about M.K. so she met with M.K. alone. M.K. began crying, told the worker of having bad dreams at night that someone named Bob[2] was going to hurt her, or her family. *Id*., at pp. 394-396. When pressed for details, M.K. said, at least three times, that Bob would kill her if she told but eventually she wrote "He raped me," on a note and gave it to Ms. Morse. *Id*., at p. 397. M.K. indicated she lived in an R.V. when this happened and she described the R.V. for the worker; indicated she slept on the couch that pulled out into

---

[2]M.K. also referred to Bob as Mr. McCormick.

a bed; and that she slept with Bob. *Id*., at pp. 399-400. Based upon M.K.'s allegations, Ms. Morse reported the allegation to a DHS intake worker. *Id*.

On January 15, 2002, Natalie Harrison, a DHS investigator assigned to referrals of child abuse and neglect, interviewed M.K. who again disclosed sexual abuse by the defendant. M.K. advised this worker that the abuse began when she was 7 years old. M.K. described where the abuse occurred and articulated behavior which was consistent with M.K.'s subsequent testimony. *Id*., at pp. 413-416.

Finally, Carolyn Ridling, a sexual assault nurse examiner at Texoma Medical Center, in Denison, Texas, testified she performed a sexual assault exam on M.K. on January 18, 2002, and found tears and scars both in her vagina and to her anal area which was consistent with some kind of penetration. *Id*., at pp. 440-443 and 448.

### III.  PETITIONER'S CLAIMS FOR RELIEF

In his petition filed herein on March 11, 2010, Petitioner raises five (5) grounds for relief.  Respondent filed a response on May 25, 2010.  Petitioner filed a reply on June 7, 2010. Specifically, petitioner asserts the following errors entitle him to release from custody: (1) Petitioner's conviction on both Child Sexual Abuse and Child Abuse violated the Double Jeopardy Clause of the United States Constitution; (2) failure to follow state law allowed petitioner's convictions despite the insufficiency of evidence to support said convictions; (3) ineffective assistance of trial and appellate counsel; (4) actual innocence; and (5) evidentiary rulings of the state court deprived him of due process of law.

### IV.  STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act, this Court is precluded

from granting habeas relief on any claim adjudicated on the merits by a state court

> unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> As to the "unreasonable application" standard, . . . only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254. . . . [A] decision is "objectively unreasonable" when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law. It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision. . . . [T]he state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.

*Sandoval v. Ulibarri*, 548 F.3d 902, 908 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468

F.3d 665, 671 (10th Cir. 2006)), *cert. denied*, 549 U.S. 1285 (2007). Furthermore,

determinations of factual issues made by state courts are presumed correct and a habeas

petitioner must rebut the presumption by clear and convincing evidence. 28 U.S.C. §

2254(e)(1).

## V. DOUBLE JEOPARDY

Petitioner asserts that his convictions for Child Sexual Abuse and Child Abuse violate

the Double Jeopardy provisions of the United States Constitution. Petitioner raised this claim

on direct appeal arguing that the statutory definition of "harm" given to the jury in

conjunction with the instruction on child abuse included sexual abuse as constituting harm

which thereby allowed the jury to find he committed child abuse in addition to sexual abuse

simply by finding he had sexually abused the victim. The OCCA denied relief finding:

> In his sole proposition of error, [Petitioner] claims the jury instructions rendered the punishments imposed multiplicious in violation of the double jeopardy clause. [Petitioner] did not object to the instructions at trial; therefore, this Court reviews for plain error only. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693.
>
> [Petitioner] argues the term "sexual abuse" is listed within the instructions on both child abuse and child sexual abuse and permitted the jury to convict him of two crimes based on the single act of sexual abuse. Although the instruction on child abuse given in this case was a uniform instruction, specifying sexual abuse as the type of harm inflicted was inappropriate and confusing. Any error in the instruction is subject to a harmless error analysis. *See Ellis v. Ward*, 2000 OK CR 18, ¶ 4, 13 P.3d 985, 986. For the error to be deemed harmless, the Court must find beyond a reasonable doubt it did not contribute to the jury's verdict. *Id.* 2000 OK CR 18, ¶ 3, 13 P.3d at 986.
>
> In the present case, the error did not contribute to the jury's verdict. The remaining instructions thoroughly instructed the jury on the crimes of child abuse and child sexual abuse. The evidence clearly showed [Petitioner] committed two separate crimes – child sexual abuse based upon his sexual relationship with the child and child abuse based upon his using the child to help him manufacture methamphetamine.
>
> [Petitioner's] double punishment argument also fails because [Petitioner's] crimes did not arise out of a single act. The proper analysis of a claim raised under 21 O.S.2001, § 11 is "to focus on the relationship between the crimes. If the crimes truly arose out of one act. . . .then Section 11 prohibits prosecution for more than one crime". *Davis v. State*, 1999 OK CR 48, ¶ 13, 993 P.2d 124, 126-27. The crime of child sexual abuse was completed when [Petitioner] forced M.K. to have sexual intercourse with him. The child abuse act was completed when [Petitioner] forced M.K. to participate in the making of methamphetamine. [Petitioner] was convicted of two separate and distinct crimes and the actions taken to complete these crimes did not arise out of one act.
>
> Since [Petitioner's] Section 11 claim fails, this Court looks to a traditional double jeopardy analysis to determine whether double jeopardy was violated. *Jones v. State*, 2006 OK CR 5, ¶ 63, 128 P.3d 521, 543. This Court

applies the "same elements" test, i.e., whether each offense requires proof of at least one element that the other does not. *Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306, 309 (1932). Applying the *Blockburger* test to [Petitioner's] case, it is clear the elements of sexual abuse of a child and child abuse are different and require different proof. This proposition is denied.

       While we find the error did not affect the verdict of guilt, there is a question of the impact on sentencing. Therefore, the sentences are **MODIFIED** to be served concurrently.

*McCormick v. State*, No. F-2007-165, slip op. (Okla. Crim. App. Apr. 29, 2008).[3]

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. This amendment is intended to prevent a defendant from receiving successive punishments or being subjected to successive prosecutions for the same offense. *United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993). In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court indicated "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (citing *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 (1911). A review of the jury instructions given in this case establishes that the elements of the two offenses that petitioner was convicted of, sexual abuse of a child and child abuse, require proof of different facts. Specifically, to be convicted of sexual abuse of a child, the jury had to be convinced, beyond a reasonable

---

[3]*See*, Respondent's Exhibit No. 3, Dkt. # 16-4.

doubt, that the defendant had actually engaged in sexual acts with the victim. On the other hand, to be convicted of child abuse, the jury only had to find, beyond a reasonable doubt, that the defendant "harmed" the child. While the Oklahoma Court of Criminal Appeals admits that the instruction containing the elements of child abuse was erroneous, it found that the error did not contribute to the jury's verdict but only affected the sentences and, therefore, was "harmless error." However, after reviewing the jury instructions, there is no way to say what evidence the jury actually based it's decision on. If the erroneous instruction affected the sentence, it surely affected the verdict as well. Since it was just as likely that the jury based its verdict on the child abuse count upon the sexual abuse which the petitioner inflicted upon the child, this court finds the error potentially had a "substantial and injurious effect or influence in determining the jury's verdict." *Bretch v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). "The Supreme Court has emphasized . . . that when a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *Stewart v. Erwin*, 503 F.3d 488, 501 (5th Cir. 2007) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 999, 130 L.Ed.2d 947 (1995)). Accordingly, this court finds that the jury instruction error had a substantial and injurious effect or influence in determining the jury's verdict and, therefore, this court vacates the petitioner's sentence and judgment on Count II, the child abuse count. Nothing within this opinion shall prohibit the State of Oklahoma from retrying the petitioner on Count II with appropriate jury instructions regarding the definition of "harm" which does not include "sexual abuse."

## VI.  SUFFICIENCY OF THE EVIDENCE

Liberally construing the petitioner's petition and brief in support, it appears that the petitioner's concern is that there was insufficient evidence to convict him of child abuse because there "is no proof of methamphetamine manufacturing."  In light of this court's ruling on petitioner's double jeopardy claim, this issue is moot.

### Conclusion

Due to an error in the jury instructions, the petitioner's conviction on the Count II for Child Abuse violated the Double Jeopardy Clause.  As a result, the petitioner is entitled to a new trial on Count II only.  Therefore, the requested writ of habeas corpus is conditionally granted as to Count II only.  Petitioner's remaining claims are moot.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for writ of habeas corpus (Dkt. # 1) is **conditionally granted** on the petitioner's double jeopardy claim. Petitioner's remaining claim is, therefore, moot.  The writ of habeas corpus shall issue unless the State of Oklahoma commences new trial proceedings on the Child Abuse count within 120 days of the entry of this Opinion and Order.

It is so ordered on this <u>14th</u> day of March, 2013.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma