# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ROBERT CLAUDE MCCORMICK, )
                                              )
                       Petitioner, )
                                              )
vs.                                          )     Case No. CIV-10-117-JHP-KEW
                                             )
DAVID PARKER, Warden, )
                                             )
                     Respondent. )

## OPINION AND ORDER

Following this Court's granting of a conditional writ on Petitioner's double jeopardy claim, the Tenth Circuit Court of Appeals reversed the decision and remanded for this Court to consider alleged *Brady* issues and issues of ineffective assistance of trial and appellate counsel. The underlying facts were set forth in this Court's original opinion and will not be restated herein. The Court would note, however, that despite Respondent's response which indicated the petitioner was raising a *Brady* claim as to the issue of Ms. Ridling's lack of SANE certification by the Texas Attorney General or her licensing as a registered nurse in Oklahoma at the time of her trial testimony, there were no such allegations in Petitioner's initial habeas corpus pleadings. Rather, Petitioner raised five grounds for relief in his original habeas corpus petition. No reference whatsoever was made to Ms. Ridling in the actual habeas corpus petition. In the Petitioner's opening brief, only three references are made to Ms. Ridling. The first is in a portion of the brief entitled "LEGAL ARGUMENT" in which Petitioner discusses the ruling on post-conviction stating: "Petitioner presented (also

herein) for State review the issues regarding double jeopardy, statutory procedures regarding lack of elements of methamphetamine manufacturing, and expert (Texas R.N. Carolyn Ridling) opinion and testimony." *See*, Dkt. No. 7, at p. 21 and Dkt. No. 13 at pp. 19-20. The second is in a portion of the Brief in which Petitioner argued he was "arbitrarily denied State created rights applicable generally to defendants." In particular, Petitioner argued it was a violation of state law for nurse Ridling (an out of state nurse) to testify in lieu of an Oklahoma licensed doctor. To support his statement that Nurse Carolyn Ridling "was not licensed as an R.N. in Oklahoma *or* S.A.N.E. certified in either Oklahoma or Texas at the time when this trial took place," Petitioner cites to Exhibits B and C. *See*, Dkt. No.7, at p. 13 and Dkt. No. 13, at p. 13. No such exhibits were attached to the Petitioner's opening brief. The final reference to Nurse Ridling appears as Petitioner discusses whether the victim's testimony required corroboration and in discussing this issue Petitioner states:

> Without Nurse Ridling's testimony, there is no corroboration. . . . . . Presentation by the prosecutor, Ms. Redman, of "Nurse Ridling" shows that [the victim's] testimony needed corroboration. . . . . .Redman entrusted [the victim] to Ridling for an out-of state exam when such examination required certification in order for Ridling to testify at the time of trial. . . . Ridling's lack of S.A.N.E. certification (in Texas or in Oklahoma . . . *ever*) may disqualify Ridling's testimony. If not, there her perjurious statements regarding S.A.N.E. certification serve to render her testimony inapplicable. Additionally, photos taken six months after [the victim] last saw Petitioner a--- at best---irrelevant to the case at hand. (See Exhibits A, B, C, and D.)[1]

Dkt. No. 7, at p. 5.

---

[1] Again, Exhibits A, B, C and D are not attached to the pleading. However, on May 13, 2010, the Petitioner filed a Motion to Amend Brief in which he asked to add to the appendix of the brief exhibits referred to therein. The Court treated this Motion as a supplement to the opening brief.

One other pleading filed in this case entitled "Traverse", which appears to be an objection to a magistrate judge's recommendation to transfer this case from the Western District to the Eastern District, contains this statement about Ms. Ridling:

> Ridling's testimony gave the jury the peace of mind to convict without any supporting evidence. Perjury by the State's witness provides strong evidence for a Motion for a New Trial. (citations omitted)
>
> \* \* \* \* \* \*
>
> Ridling is a proven liar. She lied to her employer (as licensed), to the prosecutor, to the Court, and to the jury. Her employer entrusted her to perform S.A.N.E. examinations at its facility. She lied in other trials, causing reversals and civil action (See Exhibits A-K).

Dkt. No. 8, at pp. 3-4.

In accordance with *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), perhaps this Court should have construed this allegation as a *Brady* claim. It should be noted, however, that Petitioner never alleged that the prosecutor knew Ms. Ridling was lying at the time of trial and failed to disclose the same to his trial attorney. Rather, he specifically alleged Ridling had lied to the prosecutor which clearly implies that the prosecutor was not aware of Ms. Ridling's lack of license at the time of trial. Moreover, his statements regarding Ms. Ridling's lack of certification (in Texas or Oklahoma . . . .*ever*) is belied by the exhibits which he attached to his supplement. According to those exhibits, Ms. Ridling was a licensed nurse in Oklahoma until May 1, 2004, when her license lapsed and she was "certified SANE" until April 19, 2004. Additionally, theses exhibits establish that Ms. Ridling was, in fact, a certified SANE between 2000 and 2004. Thus, it appears Ms. Ridling

was a certified SANE at the time she examined the victim on January 18, 2002; but was not a certified SANE by the time of his trial in January, 2007.

Two problems exist with this Court considering these exhibits. First, it appears that the exhibits were never presented to the Oklahoma Court of Criminal Appeals. Since all of the exhibits post-date Petitioner's January 2007 trial as well as the filing of his direct appeal brief on September 21, 2007, they could not have been submitted on direct appeal. Additionally, the post-conviction brief filed by petitioner does not contain these documents or references thereto. *See*, Brief filed by Petitioner in the Oklahoma Court of Criminal Appeals Case No. PC-2009-1184 on December 21, 2009 (Dkt. Nos. 16-6 and 16-7). No other pleadings appear in the state court record filed herein which establish that these records were presented to the state court during post-conviction proceedings. In *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011), the Supreme Court held "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Second, based upon the record herein, it is clear that this particular claim was never raised and, therefore, could not have been adjudicated on the merits regardless of a finding by the Tenth Circuit that the State has waived exhaustion. Despite this quagmire, the Court will proceed to address the *Brady* claims as presented in the Motion to Vacate (Dkt. No. 21).

# I. BRADY CLAIMS

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to the guilt or to punishment. . . . . " 373 U.S. at 87, 83 s.Ct. At 1196-1197. *See also*, *Sadler v. State*, 846 P.2d 377, 382 (Okla.Crim.App. 1993). In order to establish a *Brady* violation, a habeas petitioner must prove the prosecution suppressed evidence, the evidence was favorable to petitioner, and the evidence was material. *United States v. DeLuna*, 10 F.3d 1529, 1534 (10th Cir. 1993). The test is conjunctive and, therefore, failure to satisfy any of the prongs is dispositive. *Hooks v. Workman*, 89 F.3d 1148, 1179 (10th Cir. 2012).

## A. Statute of limitations

The State argues the *Brady* motion is, in effect, a motion to amend the habeas petition and, therefore, the new claims raised in the motion are time-barred. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), establishes a one-year limitations period in which state prisoners must seek habeas relief, subject to several specific exceptions. 28 U.S.C. § 2244(d). As a general rule, the limitations period begins when the state court judgment becomes final on direct review or the expiration of the time for seeking such review. The limitations period will be tolled where (1) state action unlawfully impeded the prisoner from filing his habeas application; (2) the prisoner asserts a constitutional right newly recognized by the Supreme Court and made retroactive to collateral cases, or (3) the factual predicate for the prisoner's claim could not previously have been discovered through

5

due diligence. 28 U.S.C. § 2244(d)(1)(B)-(D). The limitations period is also tolled during the pendency of a properly filed application for state collateral relief. *Id.*, at § 2244(d)(2).

Petitioner's conviction was affirmed by the Oklahoma Court of Criminal Appeals ("OCCA") on April 29, 2008. Therefore, his conviction became final ninety days later, on July 28, 2008. On April 17, 2009, the petitioner filed a post-conviction application in the state trial court, at which point Petitioner had one hundred and four (104) days remaining on the statutory year in which to file his habeas petition. The statute of limitations was tolled while his state post-conviction application was pending. On March 8, 2010, the OCCA affirmed the trial court's denial of Petitioner's post-conviction application. On March 11, 2010, Petitioner filed the instant habeas petition, leaving one hundred and two (102) days remaining on his one year statutory limitation period. Petitioner did not file his Motion to Vacate until December 2, 2011, more than a year after the statute of limitations period had expired on June 21, 2010. As a result, this Court must decide whether the claims contained in the *Brady* motion (Dkt. No. 21) "relate back" to the original pleading or are new claims. Fed.R.Civ.P. 15(c).

In *United States v. Espinoza-Saenz*, 235 F.3d 501, 501 (10th Cir. 2000), the Tenth Circuit joined several other circuits in setting forth the following rule regarding application of Rule 15(c):

> [P]ursuant to Rule 15(c), an untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion *if and only if* the original motion was timely filed and

6

> the proposed amendment does not seek to add a new claim or to insert a new theory into the case.

In *Woodward v. Williams*, 263 F.3d 1135 (10th Cir. 2001), the Tenth Circuit applied the ruling in *Espinoza-Saenz* in a § 2254 case.

The only claim arguably raised by Petitioner at the time of the filing of his habeas petition was that Ms. Ridling had lied about her SANE certification and had not been licensed as a nurse in Oklahoma since May 1, 2004. In the motion to vacate, Petitioner attempts to add the following claims: (1) the prosecutor withheld FBI reports regarding his arrest; (2) the prosecutor withheld reports generated by Officers Overton and Hutchinson regarding investigation of the Beams and Wal-Mart; (3) the prosecutor withheld the victim's school records and DHS records; (4) the prosecutor withheld medical records pertaining to Ms. Ridling's examination of the victim. None of these issues were raised in Petitioner's direct appeal or in his post-conviction proceedings. Rather, these claims were raised after the Respondent had already responded to the claims contained within Petitioner's habeas corpus petition. Although each of these claims involve matters that occurred during Petitioner's trial, they do not relate back to the claims specifically raised in Petitioner's habeas petition. Accordingly, this Court finds the additional claims are barred by the statute of limitations. Furthermore, this Court finds Petitioner failed to exhaust these claims.

## B. Claims related to Ms. Ridling

Petitioner states that this claim turns entirely on whether Ms. Ridling was a member of the prosecution team as "[t]here is not a serious argument that Mr. McCormick does not meet the other elements." Dkt. No. 49. According to petitioner, the fact that the victim was referred to the Texoma Health Care System by the lead law-enforcement officer, Ms. Ridling was acting in an investigative capacity and, therefore, must be considered a member of the prosecution team for *Brady* purposes. In support of his position, petitioner cites to several cases which hold an individual prosecutor is "presumed to have knowledge of all information gathered in connection with the government's investigation." *People v. Uribe*, 162 Cal.App.4th 1457, 1475, 76 Cal.Rptr.3d 829, 846 (2008)(government failed to disclose a videotape of the sexual assault examination); and *State v. Farris*, 656 S.E.2d 121, 126 (W.Va. 2007)(where sexual abuse occurred in West Virginia but was reported in Kentucky and chief of police of West Virginia took charge of investigation, knowledge obtained by Kentucky authorities was imputed to the prosecutor; thus, forensic report prepared by Kentucky authorities should have been disclosed to defendant).

While this Court is aware that the Tenth Circuit has held that a state law enforcement officer is part of the prosecution team and his knowledge will be imputed to the prosecutor under *Brady*, *United States v. Buchanan*, 891 F.2d 1436, 1442 (10th Cir. 1989), the problem with applying these cases in the instant case is that the information which was allegedly suppressed, *i.e.*, Ms. Ridling was not licensed at the time of trial, did not exist at the time the

sexual assault investigation was conducted. It is hard for the Court in this instance to find the prosecutor actually had any "authority" over Ms. Ridling at the time of trial. This is not a witness who was employed by the State of Oklahoma and, at the time of trial, she was not under the control of the state prosecutor like a state law enforcement officer. Rather, Ms. Ridling was licensed outside the State of Oklahoma, at the time of her examination of the victim, and when she testified in Petitioner's trial she worked for the Texoma Medical Center in Dennison, Texas. To hold otherwise, would require a prosecutor to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request for information regarding an out of state government witness. As a general rule, a "prosecutor does not have a duty to undertake a fishing expedition in other jurisdictions in an effort to find impeaching evidence." *United States v. Jones*, 34 F.3d 596 (8th Cir. 1994). Furthermore, the information which was allegedly "suppressed" was as readily available to the defense as to the prosecution. *Brady* does not oblige the government to provide defendants with evidence that they could obtain from other sources by exercising reasonable diligence. *United States v. Perdomo*, 929 F.2d 967 (3rd Cir. 1991). The prosecutor will not be found to have suppressed evidence in violation of *Brady* "where the evidence is available . . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Accordingly, this Court finds Petitioner has failed to establish that the

prosecutor suppressed any evidence related to Ms. Ridling's licensure at the time of trial. Therefore, habeas relief on this claim is denied.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third ground for habeas relief, Petitioner argued he received ineffective assistance of trial and appellate counsel. On direct appeal, Petitioner did not raise any issues of ineffective assistance of counsel. Rather, Petitioner first raised his ineffectiveness issues in his state post-conviction proceeding. The trial court denied his application and the OCCA affirmed the denial, holding

> . . . . . With the exception of his claim of ineffective appellate counsel, he has not raised any issue that either was not or could not have been asserted during his trial or in his direct appeal. All issues which were raised and decided on direct appeal are barred from further consideration by *res judicata*, and all issues which could have been previously raised but were not are waived. 22 O.S.2001, § 1086; *Davis v. State*, 2005 OK CR 21, ¶2, 123 P.3d 243, 244.
> 
> To support his claim of ineffective appellate counsel, Petitioner must establish counsel's performance was deficient under prevailing professional norms and that but for the deficient performance the outcome of his appeal would have been different, or he must establish factual innocence. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674, 693, 698. Petitioner's appellate counsel was successful in having his sentences allowed to be run concurrently, such that he is effectively serving one life sentence. *McCormick, supra*. He has not established that the outcome of his appeal could have or should have been any different. *Strickland, supra*. Petitioner's jury found him guilty beyond a reasonable doubt of both crimes charged, and he has not established factual innocence. *Id.*

*McCormick v. State* No. PC-2009-1184, slip op. at pp. 1-2 (Okla.Crim.App. Mar. 8, 2010), Dkt. No. 16-8.

Respondent argues the petitioner's claims are procedurally barred and without merit. Additionally, the respondent claims the OCCA's decision is not contrary to nor an unreasonable application of Supreme Court law.

## A. Procedural default

As a general rule, if a petitioner has failed to present a claim to the state courts in the manner prescribed by the procedural rules of the state, the state court may deem the claim defaulted. *Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Where a state prisoner defaults his federal claims in state court based upon an independent and adequate state procedural rule, federal review of his habeas claims will be barred. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). If the state court's finding is separate and distinct from federal law, it will be considered "independent." *See Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Duvall v. Reynolds*, 139 F.3d 768 (10th Cir. 1998), cert. denied, 525 U.S. 933, 119 S.Ct. 345, 142 L.Ed.2d 284 (1998). If the finding is applied "evenhandedly to all similar claims," it will be considered "adequate." *Maes v. Thomas*, 46 F.3d 979 (10th Cir. 1995), cert. denied 514 U.S. 1115, 115 S.Ct. 1972, 131 L.Ed.2d 861 (1995) (citing *Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982)). Where the state-law default prevented the state court from reaching the merits of the federal claim, the claim ordinarily cannot be reviewed in the federal courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). "Review is precluded 'unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *See Breechen v. Reynolds*, 41 F.3d 1343, 1353 (10th Cir. 1994), *cert. denied*, 515 U.S. 1135, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995) and cases cited therein. As noted in *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998), *cert. denied*, 525 U.S. 950, 119 S.Ct. 378, 142 L.Ed.2d 312 (1998), the procedural default rule is not a jurisdictional rule; rather, it is based upon the principles of comity and federalism.

The Tenth Circuit has held that Oklahoma's procedural bar will apply only where two conditions exist: 1) trial and appellate counsel differ, and 2) the ineffectiveness claim can be resolved upon the trial record alone. *English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998). In this case, Petitioner was represented at trial by Oklahoma City attorney Stephanie A. Younge and on appeal by Robert Jackson of Norman, Oklahoma. Moreover, all of Petitioner's claims, with the exception of the allegations regarding Ms. Ridling's licensure at the time of trial, can be resolved on the trial court record. Petitioner, however argues ineffective assistance of appellate counsel to overcome the procedural bar. Accordingly, this Court will consider the merits of his ineffective assistance of counsel claims.

**B. Merits of claim**

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the legal standards which apply to claims of ineffective assistance of counsel in a criminal proceeding. First, the Court indicated that the defendant must establish that the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms. Second, the

12

defendant must establish that the deficient performance prejudiced the defense. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064. Failure to establish either prong of the *Strickland* standard will result in a denial of Petitioner's Sixth Amendment claims. *Id.* 466 U.S. at 696, 104 S.Ct. at 2069-2070. While ensuring that criminal defendants receive a fair trial, considerable judicial restraint must be exercised. As the Supreme Court cautioned in *Strickland*,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id*. 466 U.S. at 689, 104 S.Ct. at 2065. In order to establish prejudice in the guilt stage, the defendant has to show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. In other words, deficient performance is prejudicial only where it is clear that "but for trial counsel's errors, there is a reasonable probability that the ultimate result would have been different", *Washington v. Johnson*, 90 F.3d 945 (5th Cir. 1996), *cert. denied,* 117 S.Ct. 1259, 137 L.Ed.2d 338 (1997); so that, the "confidence in the reliability of the verdict is undermined." *Id.*

The United States Supreme Court has indicated that every effort must be made by a reviewing court to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, *supra* 466 U.S. at 689, 104 S.Ct. at 1065. In addition, the Court indicated the conduct of counsel is "strongly presumed" to have been

within the wide range of reasonable professional assistance. *Id.* Finally, in considering a claim of ineffective assistance of appellate counsel, this Court applies the *Strickland* two-pronged standard used for general claims of ineffective assistance of trial counsel. *See United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995).

Trying to ascertain what inadequacies Petitioner is alleging against counsel is, at best, difficult. In Ground Three of his petition, he states the following facts in support of his claim of ineffective trial and appellate counsel:

> Not defending against denial of state rules; seeing jury was properly instructed; investigating issues and personally reviewing same; failure to argue double jeopardy at trial; effective pursuit of factual/actual innocence; presenting warrantless search issues; preserving through objections denial of cross; failure to prepare for trial/appeal; defend against trial court errors; defend against prosecutor misconduct; defend against cumulative effects.

Dkt. No. 1 at p. 16. In Proposition IV of his brief in support of his habeas petition, however, Petitioner argues his trial counsel failed to conduct a reasonable pretrial investigation on issues relating to the manufacture of methamphetamine and to challenge the failure of the state to prove each element regarding methamphetamine manufacturing. Petitioner also states he was offered a plea bargain of 25 that is <u>not</u> on the record or that it was not made known to him until after the trial began.[2] The Court previously dealt with the issues regarding methamphetamine manufacturing as an attack on the sufficiency of the evidence. Because the child abuse conviction, which relied on the manufacturing of methamphetamine,

---

[2]Petitioner admits appellate counsel may not have known about the plea bargain offer. Since Petitioner did not advise appellate counsel of this matter, appellate counsel could not have been ineffective for not raising the issue on appeal.

was overturned, whether or not the evidence was challenged could have not prejudiced the Petitioner.

Petitioner further complains that trial counsel should have argued more vigorously that the victim did not complain about anal sex. Petitioner also appears to be saying if trial counsel had objected, Ms. Ridling would not have been able to testify because she was not a licensed doctor.[3] How to attack the testimony of the victim in closing arguments was clearly a matter of trial strategy. The jury heard the victim's testimony, and her testimony was very powerful. Thus, counsel may not have wanted to focus on the testimony and this Court can not, therefore, say the strategy was unreasonable or that Petitioner was prejudiced as a result of the way the evidence was treated by defense counsel.

As to Ms. Ridling, trial counsel did make the jury aware that Ms. Ridling was not SANE certified either nationally or in Oklahoma. J.T.Tr. at pp. 306-307; Dkt. No. 18-8 at pp. 14-15. Additionally, defense counsel made the jury aware, contrary to Ms. Ridling's testimony, that Oklahoma offered a SANE certification. J.T.Tr. at pp. 446-447; Dkt. No. 18-8 at pp. 154-155. During closing arguments, defense counsel reminded the jury that Ridling "keeps up so well with her profession that she was unaware that the Oklahoma Department of Health offers a Sexual Abuse Nurse Examiner certification." J.T.Tr. at p. 520; Dkt. No. 18-8 at p. 228. As a result, Ms. Ridling's credibility was attacked before the jury by defense counsel. To the extent that Ms. Ridling was, in fact, licensed at the time she conducted the

---

[3] To support this argument, Petitioner relies on Okl.A.G.Opin. No. 06-16. This Court disagrees with Petitioner's interpretation of this opinion.

examination of the victim, this Court finds it is highly unlikely that Ms. Ridling would not have been allowed to testify at petitioner's trial even though her license had lapsed by the time of trial. Moreover, the jury saw the photographs which were taken of the victim during the sexual assault examination. As a result, this Court finds the petitioner has failed to establish prejudice.

Petitioner next complains that appellate counsel was ineffective for "failing to recognize trial Counsel (sic) defaults." Dkt. No. 7, at p. 38. Petitioner says appellate counsel should have called the victim to task for perjury and should have known that Ms. Ridling had perjured herself also. Petitioner does not present any evidence to establish that the victim committed perjury. Moreover, appellate counsel will not be considered ineffective for failing to raise a claim that does not have a reasonable probability of reversal on appeal. *Neill v. Gibson*, 278 F.3d 1044, 1057, n. 5 (10th Cir. 2001). Most of the allegations against trial counsel revolve around various evidentiary rulings that were made in his trial. Federal habeas relief is not available to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). He also claims appellate counsel should have challenged those evidentiary issues. However, based upon the record below, this Court finds Petitioner has failed to establish a reasonable probability of reversal on appeal based upon the various evidentiary rulings which were made at his trial. Accordingly, appellate counsel was not ineffective for failing to challenge these rulings on appeal.

Petitioner also claims the evidence was insufficient to convict him of child abuse because there was "no proof of methamphetamine manufacturing." Had the jury instructions

not been erroneous, this Court believes the evidence would have been sufficient to convict the petitioner of the second count of child abuse. Specifically, in relation to count two, the victim testified the Petitioner came to live with her family when she was seven years old. The victim told the jury that, shortly after arriving, the Petitioner made methamphetamine inside a motor home and that he made her dry the methamphetamine soaked coffee filters in front of a heater and then put the resulting dried white powder into baggies. The victim testified in detail about the containers and hoses used to manufacture the methamphetamine and the ingredients used in the process. She further testified that Petitioner sold the baggies full of powder to Rick Thompson and Ricky Joe Phillips. The victim testified the petitioner gave her methamphetamine beginning when she was eight and a half years old and several times thereafter. The victim testified that using the methamphetamine had caused her teeth to rot. J.T.Tr. Vol. I, at pp. 156-175. Other than the testimony of Petitioner's ex-wife who had visited the petitioner at his home on a few occasions over a period of three to four years, and had not observed anyone manufacturing methamphetamine, Petitioner offered no evidence to rebut the victim's allegations other than the smell in the motor home which the ex-wife attributed to Petitioner's use of horse lineament. J.T.Tr. Vol. II, at pp. 486-489.

Additionally, a former drug task force officer testified about the primary methods used to manufacture methamphetamine and the ingredients used in each. He explained that the liquid mixture would be poured thru coffee filters and dried with a heat source; resulting in the methamphetamine powder. He also testified that people who use methamphetamine often suffer from tooth loss. *Id.*, at pp. 326-341. Thus, his knowledge of how methamphetamine

17

is made corroborated the victim's testimony about how the petitioner had made methamphetamine. At the time of his investigation, the motor home where the victim indicated the methamphetamine had been made was no longer on the property. Thus, on cross-examination, the officer admitted he had found no evidence that a methamphetamine lab had existed on the property. *Id.*, at p. 348. A child welfare worker also testified regarding the information the victim had provided him about living in the motor home with the petitioner and the manufacture of methamphetamine inside of the motor home, including the various materials used in processing the drug and the method used. *Id.*, at p. 358-363. The evidence about the sexual abuse was even more detailed. While Ms. Ridling corroborated the victim's testimony from a medical standpoint, this Court believes the victim's testimony, as well as statements the victim made to various investigators, would have convinced the jury of Petitioner's guilt. The victim's testimony was straightforward, unwavering and completely credible. She consistently reported the same information to authorities. Furthermore, the victim's brother testified Petitioner never had a job during the four years he had lived with his mother, but he always had money. J.T.Tr. Vol. I, at p. 275. Accordingly, this Court finds appellate counsel was not ineffective for failing to raise this issue on appeal.

Furthermore, since the documents petitioner relies on regarding Ms. Ridling's qualifications, post-dates his trial and the filing of his direct appeal, this Court finds appellate counsel was not ineffective for failing to discover this information. Furthermore, appellate counsel prevailed on the argument which he actually raised. Thus, this Court finds

Petitioner has failed to demonstrate that the Oklahoma Court of Criminal Appeals decision denying his ineffective assistance of appellate counsel claim was an unreasonable application of *Strickland*. Furthermore, Petitioner has failed to come forward with evidence of actual innocence and so his ineffective assistance of counsel claims are procedurally barred.

## Conclusion

Having considered the *Brady* and ineffective assistance of trial and appellate claims which were remanded to this Court, the Court reaffirms its earlier decision ***conditionally granting*** the petition for writ of habeas corpus (Dkt. No. 1) on the petitioner's double jeopardy claim. The writ of habeas corpus shall issue, as to Count II only, unless the State of Oklahoma commences new trial proceedings on the second Child Abuse count within 120 days of the entry of this Opinion and Order.

It is so ordered on this  16th  day of October, 2014.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma